UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WINFIELD V. SPENCER,          )<br>                              )<br>     Plaintiff                )<br>                              )<br>v.                            )<br>                              )<br>SOCIAL SECURITY ADMINISTRATION )<br>COMMISSIONER,                 )<br>                              )<br>     Defendant                ) | No. 1:13-CV-00171-JAW |

**REPORT AND RECOMMENDED DECISION**

After a hearing on Plaintiff Winfield Spencer's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff Winfield Spencer has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits.

Following a review of the record, and after consideration of the parties' written and oral arguments, as explained below, the recommendation is that the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

Because the Appeals Council "found no reason" to review the decision, the Acting Commissioner's final decision is the March 2, 2012, decision of the Administrative Law Judge. The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. *See* 20 C.F.R. § 404.1520.

At step 1 of the sequential evaluation process, the ALJ found that Plaintiff meets the insured status requirements of Title II through December 31, 2012, and has not engaged in substantial

gainful activity from September 1, 2009, the date of alleged onset of disability. (ALJ Decision, Findings and Conclusions ¶¶ 1, 2, ECF No. 9-3, PageID # 81.)

In the second stage of the analysis, the ALJ determined that Plaintiff has two severe impairments, chronic obstructive pulmonary disease and obesity. The ALJ also found that certain other impairments, including Plaintiff's hearing and psychological symptoms related to post-traumatic stress disorder and depression, were not severe. (*Id.* ¶ 3.)

At step 3, the ALJ found that Plaintiff's severe impairments would not meet or equal any listing in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (*Id.* ¶ 4.) This listing evaluation is not disputed. As part of his step 3 evaluation, the ALJ applied the psychiatric review technique and concluded that Plaintiff's mental limitations impose only mild limitations or difficulties in relation to activities of daily living, social functioning, and concentration, persistence, and pace. (*Id.* ¶ 3.) Plaintiff disputes this finding.

Prior to further evaluation at steps 4 and 5, the ALJ assessed Plaintiff's residual functional capacity. The ALJ found that with his combined impairments, Plaintiff maintained a capacity to perform light work, with "occasional" limitations on ramps, stairs, balancing, crawling, stooping, kneeling, and crouching. The ALJ also concluded that Plaintiff must avoid extreme cold, humidity, and pulmonary irritants. (*Id.* ¶ 5.) Based on this residual functional capacity finding, a vocational expert testified that Plaintiff would be able to perform his past relevant work as a security guard/security supervisor. (*Id.* ¶ 6.) Relying at least in part on this testimony, at step 4, the ALJ concluded that Plaintiff was not disabled. (*Id.* ¶¶ 6, 7.)

### Plaintiff's Statement of Errors

For social security purposes, Plaintiff is classified as being of advanced age. He also has a high school education and can communicate in English. Under the Guidelines, if Plaintiff is no

longer capable of performing his past relevant work, Plaintiff "grids out" as disabled unless his past relevant work or education is found to provide him with transferable skills and a transition to other work would require "very little, if any, vocational adjustment" in relation to "tools, work processes, work settings, or the industry." *See* Medical-Vocational Guidelines §§ 201.00(f), 202.04-202.08.

Plaintiff argues that the ALJ erred at step 2 of the sequential evaluation process when the ALJ determined that Plaintiff's hearing loss and mental health impairment do not impose severe limitations. (Statement of Errors at 1-16.) Plaintiff also argues that the ALJ's residual functional capacity finding is erroneous because the ALJ failed to include a restriction related to cold/damp environments, which restriction would be significant given that Plaintiff's past relevant work includes exposure to the elements. (*Id.* at 17-18.) Finally, Plaintiff contends that the ALJ did not discuss adequately the limiting effects of obesity in the context of his residual functional capacity finding. (*Id.* at 18-19.)

### A. Standard of Review

The Court must affirm the administrative decision so long as it applies the correct legal standards and is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

B.  **Discussion**

*1.    The step 2 challenge*

At step 2 of the sequential evaluation process, the adjudicator must consider the severity of a claimant's impairments. The claimant has the burden to prove the existence of a severe, medically determinable, physical or mental impairment, or a severe combination of impairments, that meets the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). To satisfy the durational requirement, the impairment or combination of impairments must be expected to result in death, or to have lasted or be expected to last for a continuous period of at least 12 months. *Id.* § 416.909.

The step 2 requirement of "severe" impairment imposes a *de minimis* burden, designed merely to screen groundless claims. *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 1123 (1st Cir. 1986). The adjudicator may find that an impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28). At step 2, only medical evidence may be used to support a finding of severe impairment. 20 C.F.R. § 416.928.

Should the Court find error at step 2, remand is not inevitable. Because Plaintiff has the burden to establish a disabling degree of limitation resulting from his impairment(s), error at step 2 is generally deemed harmless, unless Plaintiff can demonstrate that the error proved outcome determinative at a later stage of the process. *Socobasin v. Astrue*, 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue*, No. 09-cv-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand,

unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim."). In the particular context of this case, Plaintiff must demonstrate that but for any alleged error at step 2, the ALJ would have found that Plaintiff was incapable of meeting the demands of his past relevant work.

    *a. Plaintiff's hearing impairment*

The ALJ found that the record regarding Plaintiff's hearing loss did not establish that Plaintiff suffered from a severe impairment. The ALJ acknowledged that Plaintiff was diagnosed in 2007 with bilateral, downward sloping moderate to severe sensorineural hearing loss, and that Plaintiff was prescribed hearing aids. (PageID # 82, citing Ex. 1F/51.) The chart documenting a November 2009 examination states: "On last visit he had otitis externa and problem with his hearing aid. He now has a new aid. The ear still has some discomfort, but much better, and no [discharge]. He has cortisporin ear drops if needed." (PageID # 433.) A July 2010 note reports: "Hearing aids. Not used due to fungal in ears. Vet had ear infection in Fla. Took Clindamycin. Resolved on last visit to clinic in Fla." (PageID # 405.) A September 2010 note similarly reports: "SNHL, not wearing aids, long standing itching, hx fungus last year then bacterial infection. Would like audiology consult." (PageID # 980.) A report of a December 2010 consultative exam for an updated hearing evaluation provides: "Veteran reports he has been unable to wear his hearing aids due to psoriasis in his ear canals. They were causing discomfort and bleeding. Veteran reports he was issued lotion from his doctor that has alleviated the itchiness and dryness, but he has not tried to wear the hearing aids since receiving the lotions." (PageID # 1014.) The assessment of the evaluating physician: "Hearing loss has improved significantly since last examination on 9/10/2007." The physician suggested another model of hearing aid that would be made of a different material, but noted: "Veteran has declined shell remake and reports he will try

5

aids with extended receiver tube removed and after using lotion in his ear canals." (*Id.*) Plaintiff continued to complain of irritation with the use of hearing aids though 2011. (PageID # 941.)

Based on this evidence, the ALJ concluded that Plaintiff had established the existence of a hearing impairment, but found that Plaintiff's hearing aids would improve his hearing, and that Plaintiff failed to establish reasonable compliance with available remedies to address any hearing aid discomfort. (PageID # 82.) Plaintiff argues that the ALJ misstated the evidence concerning his difficulty with his hearing aids. (Statement of Errors at 12-13.) In support of this argument, Plaintiff cites additional medical records regarding his difficulties, including ear infections, which records cover a period in excess of 12 months.

A review of the record, which includes the opinion of a consulting physician who reviewed Plaintiff's medical records in November 2010 and found no evidence of a severe hearing impairment (Richard Chamberlin, M.D., Physical RFC Assessment, Ex. 15F, PageID # 901, ¶ E), reveals that an objectively reasonable person could conclude that Plaintiff's hearing difficulties do not constitute a severe impairment. Accordingly, the ALJ's determination is supported by substantial evidence on the record.

    b.    *Mental limitations*

The ALJ found that the record of Plaintiff's psychological impairment is consistent with a finding of no more than mild symptoms. The ALJ concluded that Plaintiff experienced a temporary period of increased symptoms in August 2009, which symptoms improved as early as November 2009 and significantly improved by June 2010. He focused on evidence suggesting that Plaintiff's symptoms are controlled with medication and allowed that Plaintiff experienced moderate symptoms for less than 12 months in or around August 2009. (PageID # 84-85, citing Ex. 1F at 71, 102, 124, 129; Ex. 16F at 50, 65, 71; and Ex. 17F at 40.)

The ALJ's assessment is supported by the October 2010 psychiatric review technique findings of David Houston, Ph.D. (Ex. 14F, finding no severe mental impairment), but his finding is arguably in some conflict with the May 2010 psychiatric review technique and mental RFC assessment of Carol Delaney, Ph.D. (Ex. 10F, assessing moderate social difficulties & Ex. 9F, placing the moderate social limitations in the areas of interacting with the public and responding appropriately to supervisor criticism). In her notes, Dr. Delaney wrote that on account of anxiety and PTSD, Plaintiff "may have some difficulty negotiating interpersonal issues in the workplace, so he may function better with minimal contacts with the public." (PageID # 850, 863.) Notably, this indeterminate assessment is not dramatically different than the ALJ's finding.

Plaintiff argues that the ALJ erred by not imposing a social restriction in his RFC findings. Plaintiff maintains that the treating and examining medical sources found some psychiatric impairment, and that the ALJ improperly rejected that finding based, in part, on a neuropsychological evaluation that occurred six-to-seven months prior to his alleged onset date. Plaintiff notes that his impairment is psychiatric, in any event, not cognitive.

In discussion of Plaintiff's psychiatric records, the ALJ clearly recognized that he was addressing PTSD and depression as the psychiatric impairments of record. (PageID # 83.) While the ALJ discussed the February 2009 neuropsychological evaluation conducted by Robert Weniger, Psy.D. (Ex. 1F/28-32), the ALJ's mention of the evaluation appears to have been for the purpose of establishing a baseline, not for the purpose of discrediting any of the findings or opinions subsequently offered by treatment providers or others. (PageID # 83.)

The ALJ noted the existence of moderate symptoms in August 2009, a referral for psychiatric medication management, and November 2009 treatment notes that reflect positive results from the treatment. (*Id.* at 83-84, citing Ex. 1F at 107, 124 (Stephen Doyle, PA-C, provider

7

records).) The ALJ also cited and relied upon the records generated as the result of Plaintiff's treatment with PA Doyle (the ALJ misidentified Doyle as a physician), which records reflect generally mild symptoms. The ALJ acknowledged and discussed medical opinion evidence predicting impairment of Plaintiff's ability to work (Ex. 5F, Ronnie Grubbs, Psy.D., April 2010 Consultative Examination Report; Ex. 3F, Department of Veterans Affairs finding of 70% disability; Ex. 9F, May 2010 mental RFC assessment of Carol Delaney, Psy.D.), but accorded great weight to the November 2010 mental RFC assessment of David Houston, Ph.D., who assessed Plaintiff's psychiatric impairment as non-severe. (Ex. 14F.) Simply stated, a review of the ALJ's decision demonstrates that the ALJ did not ignore the evidence, misapply the law, or judge matters that are properly reserved for experts. The ALJ's decision, therefore, is supported by substantial evidence on the record.[1]

## 2. *Residual Functional Capacity*

### a. *Cold/damp*

Plaintiff contends that the ALJ erred by disregarding a restriction from Dr. Rabinowitz related to cold/damp conditions, while otherwise giving "great weight" to Rabinowitz's opinion about Plaintiff's physical RFC. (Statement of Errors at 17.) The ALJ, however, did not ignore or fail to consider the impact on Plaintiff's work capacity of weather-related conditions. In fact, in

---

[1] Plaintiff argues that the ALJ overemphasized the records of Stephen Doyle, which suggest only minimal concerns. In support of this argument, Plaintiff notes that the ALJ erroneously describe Doyle as an M.D. when he is in fact a PA. (Statement of Errors at 6-7.) The generally positive findings drawn from PA Doyle's records are not rendered insubstantial simply because Doyle is not a physician. Plaintiff also emphasizes the opinion of Sally Haley, M.D., who performed a "review" PTSD examination in August 2009, and opined that Plaintiff suffered social limitations secondary to PTSD. (*Id.* at 5, citing R. 355-58, PageID # 386-89.) Plaintiff also points to an increase in medication in June 2010, and a report of increased flashbacks in December 2010 as evidence that his symptoms were severe. (*Id.* at 7, citing Record at 386-87, 989.) These record entries, however, cannot be read in isolation. Although these records might be in conflict with other medical evidence of record, the ALJ must resolve conflicts in the evidence. *See, e.g., Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."). Thus, the fact that the record includes medical evidence that can be viewed as inconsistent with the ALJ's findings does not invalidate the ALJ's determination.

his ALJ's finding, the ALJ imposed a "humidity" restriction and an "extreme cold" restriction. With this RFC finding, which included the weather-related conditions, a vocational expert testified that Plaintiff would be able to perform his past relevant work as a security guard/security supervisor. Furthermore, consistent with the ALJ's findings and the vocational expert's testimony, the Dictionary of Occupational Titles reports that the job of security guard/security supervisor does not involve wet or humid environments. (Opposition at 11, citing DOT # 372.667-034, 1991 WL 673100.) Plaintiff's argument that Dr. Rabinowitz's cold/damp restriction compels a remand is unpersuasive.

*b. Obesity*

Defendant's administrative rulings include a commitment to evaluating the limiting impact that obesity has on social security claimants. *See* SSR 02–1p, *Titles II and XVI: Evaluation of Obesity,* 2000 WL 628049 (Sept. 12, 2002). The Ruling recognizes that obesity is "a risk factor that increases an individual's chances of developing impairments in most body systems" and "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." 2000 WL 628049, at *3. The Ruling provides that obesity will be considered in connection with the sequential evaluation process at step 2 and step 3, and also as part of the assessment of a claimant's residual functional capacity and readiness to perform work activity in connection with step 4 and step 5. *Id.* The standards for claim evaluation require the adjudicator to make an assessment "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02–1p, 2000 WL 628049, at *6. Consideration of obesity is not subject to heightened demands that require protracted discussion. "As with any other impairment," the Commissioner promises that adjudicators "will explain how we reached our conclusions on whether obesity caused any

9

physical or mental limitations." *Id.* at *7.

Plaintiff argues that the ALJ did not adequately discuss the effect of Plaintiff's obesity on his RFC. (Statement of Errors at 18-19.) This argument is unconvincing. The ALJ's RFC discussion references Plaintiff's body mass index, notes Plaintiff's disinterest in participating in a VA program to control weight, and explicitly states that the ALJ "incorporate[d]" his consideration of obesity into his RFC finding. In addition, the ALJ specifically considered Plaintiff's chronic obstructive pulmonary disease, and imposed a restriction to light exertion in combination with obesity. (PageID # 88-90.) Finally, the ALJ's assessment of the limiting effects of obesity, singularly or in combination with other impairments, is supported Dr. Chamberlin's physical RFC assessment, in which assessment Dr. Chamberlin specifically noted his review of obesity findings. (Ex. 15F, PageID # 904.) While the discussion of obesity is not expansive, the ALJ plainly considered it in assessing Plaintiff's residual capacity.

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court affirm Defendant's final decision and enter judgment in favor of Defendant.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

April 14, 2014      /s/ John C. Nivison
                                  U.S. Magistrate Judge